IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: NEUROPROTEXEON, INC., *et al.*, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Case No. 19-12676 (MFW) |
| | ) | |
| | ) | |
| JMB CAPITAL PARTNERS LENDING, LLC, | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | |
| | ) | C.A. No. 20-1210 (MN) |
| v. | ) | |
| | ) | |
| NEUROPROTEXEON, INC., *et al.*, | ) | |
| | ) | |
| Appellee/Cross-Appellant. | ) | |

**MEMORANDUM OPINION**

Frederick B. Rosner, Scott J. Leonhardt, Jason A. Gibson, THE ROSNER LAW GROUP LLC, Wilmington, DE; Robert M Hirsh, Rachel Maimin, LOWENSTEIN SANDLER LLP, New York, NY – Counsel to JMB Capital Partners Lending, LLC.

William P. Bowden, Gregory A. Taylor, Stacy L. Newman, Katharina Earle, ASHBY & GEDDES, P.A., Wilmington, DE – Former Counsel to the Debtors and Debtors-in-Possession.

July 29, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Cross-Appeal by the law firm of Ashby & Geddes, P.A. ("A&G"), as former counsel to debtor NeuroproteXeon, Inc. and certain affiliates ("Debtors") from the Bankruptcy Court's August 27, 2020 *Order (A) Granting in Part and Denying in Part Ashby & Geddes, P.A.'s Motion for Entry of an Order (i) Directing JMB Capital Partners Lending, LLC to Fund the Carve-Out, (ii) Awarding Attorneys' Fees and Costs, and (iii) Setting a Deadline for Filing Final Chapter 11 Fee Applications and Scheduling a Hearing Thereon, (B) Granting JMB Capital Partners Lending, LLC's Cross Motion to Stay Discovery and Quash Subpoenas Issued by Ashby & Geddes, P.A. and The Office of the United States Trustee, and (C) Converting Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* (AA0670-673)[1] ("the Order"). The underlying appeal brought by JMB Capital Partners Lending, LLC ("JMB") was voluntarily dismissed by Order dated December 17, 2020 (D.I. 14) leaving only A&G's Cross-Appeal before the Court. A&G challenges the Bankruptcy Court's failure to direct JMB to fund a carve-out for professional fees under a debtor-in-possession financing order ("Carve-Out Question") and its failure to award A&G its fees and costs incurred in connection with its request for relief ("Fees and Costs Question"). JMB has moved to dismiss the appeal on the basis that there is no final order or judgment and that this Court lacks jurisdiction. For the reasons set forth herein, the Court will dismiss the Cross-Appeal.

**I.     BACKGROUND**

    **A.     The Final DIP Order**

On December 16, 2019 ("the Petition Date"), the Debtors filed for protection under chapter 11 of the Bankruptcy Code. The Debtors retained several professionals (collectively, "the Case

---

[1] The appendix (D.I. 13) filed in support of A&G's opening brief is cited herein as "AA___."

Professionals"), whose retention was subsequently approved by the Bankruptcy Court, including A&G as bankruptcy counsel. (AA0286-287).

Prior to the Petition Date, the Debtors entered into a loan agreement with JMB dated as of November 26, 2019 ("the JMB Prepetition Loan Agreement"). (AA0311-378). Subject to the terms and conditions of the JMB Prepetition Loan Agreement, JMB loaned the Debtors $250,000 ("the JMB Prepetition Loan") to fund working capital, professional retainers, and to provide the Debtors with the ability to prepare the chapter 11 cases. (AA0318). The obligations under the JMB Prepetition Loan Agreement are secured by substantially all of the Debtors' assets. (*Id.*).

To fund their bankruptcy cases, the Debtors entered into a *Senior Secured, Super-Priority Debtor-In-Possession Loan And Security Agreement* dated as of December 16, 2019 ("the DIP Credit Agreement") (AA0199-282) with JMB that provides up to $5 million in post-petition financing ("the JMB DIP Facility"). (AA0415, 420). The JMB DIP Facility was approved by the Bankruptcy Court on a final basis (AA0165-282) ("the Final DIP Order"). Under the Final DIP Order, the JMB Prepetition Loan was rolled up into the JMB DIP Facility. (AA0176-177 ¶ 5). The Final DIP Order granted JMB first priority liens on all of the Debtors' assets ("the DIP Collateral") and superpriority claims, all of which are expressly subject to the Carve-Out (defined below). (AA0171 ¶ L; AA0180-183 ¶¶ 10, 12). Upon interim approval of the JMB DIP Facility, the Debtors received interim funding in the amount of $1,500,000 (inclusive of the roll-up of the JMB Prepetition Loan) under the JMB DIP Facility. (AA0175 ¶ 3).

The Carve-Out is defined in the Final DIP Order and includes, among other things, (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) the reasonable fees and expenses up to $15,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) the aggregate amount of unpaid fees and expenses of the Case Professionals under §§ 327(a) and 328 of the Bankruptcy Code, to the

2

extent such fees and expenses are allowed and payable pursuant to an order of the Bankruptcy Court ("Allowed Professional Fees"). (AA0183-184 ¶ 13(a)). The Final DIP Order further provides that the amount of Allowed Professional Fees shall not exceed the sum of: (x) an aggregate amount per week limited to the amount set forth in the Budget for Allowed Professional Fees incurred prior to the delivery of a Carve-Out Trigger Notice, provided (i) the Maturity Date has not occurred or (ii) an Event of Default has not occurred or is continuing ("the Pre Carve-Out Notice Trigger Cap") plus (y) $50,000 for Allowed Professional Fees and Committee Expenses incurred from and after the delivery of the Carve-Out Trigger Notice, less any outstanding amount of retainers received by the Case Professionals prior to the Petition Date ("the Post Carve-Out Notice Cap", and together with the Pre Carve-Out Notice Trigger Cap, "the Carve-Out Cap"). (*Id.*).

### B. The Default

On January 30, 2020, JMB sent a notice to the Debtors (AA0499-0500) ("the Carve Out Trigger Notice") pursuant to paragraph 13(b) of the Final DIP Order, which stated that an Event of Default has occurred and is continuing under the DIP Credit Agreement. The Event of Default identified in the Carve-Out Trigger Notice was the failure of the Debtors to select a stalking horse bidder satisfactory to JMB by January 28, 2020. (AA0500).

As of January 30, 2020, the aggregate amount set forth in the Budget for Allowed Professional Fees plus budgeted U.S. Trustee fees plus the Post Carve-Out Notice Cap is $978,571.42 ("the Carve-Out Reserve Amount"). (AA0297 ¶ 14). JMB did not contest the amount of the Carve-Out Reserve Amount.

Following receipt of the Carve-Out Trigger Notice, the Case Professionals continued to work to locate an interested buyer for the Debtors' assets for the benefit of the Debtors, their estates and their creditors, including JMB. (AA0297 ¶ 15). During this time, the Case Professionals

3

agreed not to force the funding of the Carve-Out, which would have also required an immediate conversion of the Debtors' cases to chapter 7, so that the Debtors could continue to operate and pursue a value maximizing sale transaction. (AA0573 ¶ 4). The Case Professionals were assured by JMB on multiple occasions that JMB would fund the Carve-Out as required under the Final DIP Order. (*Id*. at 6). On or about April 10, 2020, the Debtors furloughed all of their employees so that their remaining cash could be preserved and dedicated to the pursuit of a sale transaction. (AA0297 ¶ 16). Debtors' management continued their efforts without pay to locate a willing buyer with the ability to close a sale transaction satisfactory to JMB. (*Id*.). Such a buyer was not identified, and funds from the JMB DIP Facility were exhausted. (*Id*.).

Despite repeated requests, JMB failed to fund the Carve-Out. (AA0297-298, ¶ 17). At the time of the appeal, A&G had not received payment of any fees or expenses incurred in the chapter 11 cases. (*Id*.).

        C.        **The Auction**

On July 10, 2020, counsel for JMB sent a foreclosure notice to Debtors and U.S. Trustee. (AA0501-505). JMB asserted that one or more Events of Default under the DIP Credit Agreement had occurred and had not been cured, which entitled JMB to pursue its rights and remedies under the Final DIP Order. (AA0502). As such, JMB provided notice of its intent to sell some or all of its DIP Collateral (*i.e.*, all of the Debtors' assets) at one or more public telephonic sales commencing no earlier than 20 days from the date of the notice. (AA0504).

On July 31, 2020 at 10:00 a.m., counsel for JMB, Robert Hirsh, Esq., convened and presided over the Auction. (AA0573 ¶ 7). Unbeknownst to the Debtors at the time, JMB arranged for its affiliate, Shady Bird Lending LLC ("Shady Bird"), to attend the Auction and bid on the Debtors' assets. (*See* AA0651-652, 656 ("[JMB] didn't credit bid. [JMB] decided, instead, to have Shady Bird purchase the collateral . . . .").) Shady Bird opened the bidding with a bid of

4

$1,000. (AA0573 ¶ 8). There were no other bids, and JMB did not counter Shady Bird's bid. (*Id*.). Mr. Hirsh declared Shady Bird the winning bidder with a bid of $1,000, and the Auction was concluded. (*Id*.). Following the Auction, counsel for the Debtors discovered that Mr. Tandon, a principal with JMB, is (or was) also a principal of Shady Bird. JMB later admitted its affiliation with the winning bidder. (*See* AA0652:2-3 ("But we don't dispute the close relationship. In fact, when we were asked, after the auction, about the relationship, we did respond truthfully, of course, to the professionals about the association.")).

      D.      **The Motion to Compel**

Because JMB foreclosed on its collateral through an affiliated entity as a result of the Auction, on August 10, 2020, A&G filed a motion to compel (AA0291-635) ("the Motion to Compel"), asserting, among other things, that the Bankruptcy Court should direct JMB to fund the Carve-Out in the Carve-Out Reserve Amount in accordance with the Final DIP Order. A&G argued that JMB had orchestrated a sham foreclosure auction to avoid its obligation to fund the Carve-Out under the Final DIP Order. Rather than submit a bid in its own name, JMB arranged for an affiliated entity (Shady Bird) to attend the Auction and submit a nominal bid on its behalf. Following the Auction, however, it became clear that JMB was in fact the winning bidder and de facto owner of the Debtors' assets. In other words, A&G argued, JMB recovered its collateral. As such, and because JMB's liens on the Debtors' assets are expressly subordinate to the Carve-Out under the Final DIP Order, JMB was required to fund the Carve-Out. (*See id.* at AA0292, AA0299-0300). JMB took the position that A&G was not entitled to more in fees than the amount paid at the Auction for the Debtors' assets, *i.e.*, $1,000.

On August 24, 2020, the Bankruptcy Court held a hearing to consider the relief requested in the Motion to Compel ("the Hearing"). At the conclusion of the Hearing, the Bankruptcy Court found that "what JMB set up was clearly designed to avoid its obligations to fund the carveout in

5

the event that no other buyers got the collateral and it ended up with them through a credit bid or otherwise." (AA0663:20-23).  The Bankruptcy Court determined to unwind the Auction and return the assets to the Debtors.  (AA0663:15-18).  The Bankruptcy Court deferred ruling on the Carve-Out Question, explaining:

> I'm not going to order JMB, however, to fund the carveout *at this time* because I don't know what the assets are worth.  But I can certainly say I am not convinced that $1,000 is the fair market value of the assets . . . I just cannot make that ruling because I do not think the auction was conducted in accordance with state law, and I think it was specifically designed to avoid JMB's obligations under the final DIP order.

(AA0663:24-AA0664:6) (emphasis added).  Although the Motion to Compel also sought attorneys' fees and costs, which were not contested by JMB, the Bankruptcy Court did not award fees or costs, stating "I'm not going to deal with that *at this point*.  I'm not sure what to do with that *at this point*." (AA0665:10-12) (emphasis added); *see also* AA0663 (noting that, "[i]f JMB is correct that [the assets are] only worth $1,000, then either the debtor or a Chapter 7 Trustee can dispose of them").

On August 27, 2020, the Bankruptcy Court entered the Order denying in part and granting in part the Motion to Compel.  (AA0670-673).  As set forth in the Order, the Court set aside the Auction and ordered Shady Bird to immediately return and turnover the Debtors' assets to the Debtors' estates.  (AA0671 ¶ 2).  The Order does not state any ruling on the Carve-Out Question or the Fees and Costs Question.  The Order also converted the chapter 11 cases to cases under chapter 7.  (AA0672, ¶ 6).

    E.  **The Appeal and the Abandonment**

On September 10, 2020, JMB filed its Notice of Appeal (AA0674-681) from the Order challenging the Bankruptcy Court's determination to set aside the results of the Auction (D.I. 7).

On September 21, 2020, A&G filed its Notice of Cross-Appeal from the Order (AA0682-689) challenging the Bankruptcy Court's failure to direct JMB to fund the Carve-Out following the Auction pursuant to the Final DIP Order in the amount of the Carve-Out Reserve Amount and the Bankruptcy Court's failure to award A&G its fees and costs incurred in connection with the Motion to Compel (D.I. 8).

On November 4, 2020, the Chapter 7 Trustee appointed to administer the Debtors' cases filed a *Notice of Abandonment* setting forth his intention to abandon the Debtors' assets on the basis that those assets were of inconsequential value and benefit to the Debtors' estates due to the Carve-Out and JMB's subordinate liens. (AA0690). The Notice of Abandonment did not establish any fair market value for the Debtors' assets, but reflects the Chapter 7 Trustee's determination that any proceeds from the sale of the Debtors' assets would leave little (if any) recovery for the Debtors' estates and creditors.

On November 16, 2020, JMB filed a limited objection and cross-motion (AA0692-699) ("the Cross Motion"), requesting three forms of relief: (i) that the Debtors' assets be abandoned to Shady Bird (Cross Motion ¶ 2); (ii) that any order approving the abandonment reinstate the results of the Auction whereby Shady Bird purchased the Debtors' assets for the nominal price of $1,000 (*id*.); or (iii) that the Court direct the Trustee to sell the Debtors' assets to JMB for $50,000 (*id*. ¶ 4). (AA0692-693).

On November 18, 2020, A&G filed a response (AA0700-1096) ("Response to Cross Motion"). A&G noted that, "[G]iven JMB's repeated efforts to obtain the Debtors' assets – first through an affiliated entity at the sham Auction, then through an appeal of this Court's August 27, 2020 Order and now through the Cross Motion – it[']s clear that the assets have some value. Otherwise, why would JMB expend significant time and expense to recover assets worth nothing?" A&G asserted that, "to the extent JMB recovers on its collateral and becomes the owner

of the Debtors' assets through abandonment to Shady Bird Lending, a second attempt at a foreclosure and auction under state law, reinstatement of the July 31, 2020 Auction[,] or enforcement of the sale from the Trustee to JMB, it should be required to fund the Carve-Out in the Carve-Out Reserve Amount" (Response to Cross Motion at 3). (AA0702).

On November 25, 2020, A&G filed its opening brief on the merits of its Cross-Appeal. (D.I. 12). The same day, JMB filed a motion for voluntary dismissal of its appeal, which was granted by this Court on December 17, 2020. (D.I. 11,14).

At a hearing held on December 16, 2020, the Bankruptcy Court held oral argument on the abandonment. (*See* D.I. 15 at Ex. A, "12/16/20 Hr'g Tr."). The Bankruptcy Court declined to reinstate the Auction and approved the abandonment. (*Id*. at 12.). As raised by A&G, the Bankruptcy Court again declined to rule on the Carve-Out Question and Fees and Costs Question but this time on the basis that the Carve-Out Question was pending appeal in this Court. (*Id*. at 11 ("I think that [] the dispute over the carve-outs and the legitimacy of the auction are not before me. I think they are encompassed in the appeal that has been filed regarding my prior ruling.").

On December 28, 2020, JMB filed a motion to dismiss A&G's Cross-Appeal (D.I. 15) ("Motion to Dismiss"). JMB did not file an answering brief on the merits of the Cross-Appeal. A&G filed a response to the Motion to Dismiss (D.I. 16) and a reply in further support of the merits of its Cross-Appeal (D.I. 17). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## II.    PARTIES' POSITIONS

JMB argues that the appeal should be dismissed for lack of jurisdiction because there was no "final judgment" pursuant to 28 U.S.C. § 158(a). (D.I. 15 at 1). According to JMB, A&G "jumped the gun, filing this appeal before the Bankruptcy Court made any decision on the issues

8

raised." (*Id*.).  JMB urges the Court to dismiss the appeal "on jurisdictional grounds [or] remand the case to the Bankruptcy Court so that it can actually rule on the issues posed." (*Id*.).

A&G argues that JMB motion to dismiss is procedurally improper, that JMB failed to file any answering brief on the merits, and that JMB has therefore waived any response to the issues A&G has raised in its opening brief. (D.I. 16 at 2-3). A&G further argues that the Order should be considered final under the Third Circuit's "flexible, pragmatic approach to determining whether an order of the Bankruptcy Court is final." (*Id*. at 4-8 (citing *In re Finova Grp., Inc.*, 2008 WL 522965 at *1 (D. Del. Feb. 26, 2008) (citing *In re West Electronics, Inc.*, 852 F.2d 79, 81 (3d Cir. 1988)).  A&G argues that if the Order is not final, leave to appeal the interlocutory order should be granted.  (D.I. 16 at 8-9).

### III.   ANALYSIS

Appellate courts generally employ a "practical rather than a technical construction" of the finality requirement. *See, e.g., Balthazar v. Atl. City Med. Ctr.*, 137 F. App'x 482, 487 (3d Cir. 2005).  In bankruptcy appeals, "finality is construed more broadly than for other types of civil cases." *In re Culp*, 550 B.R. 683, 692 (D. Del. 2015).  Under the Third Circuit's approach, the Court may consider the following non-exclusive factors:

> (1) whether the order leaves additional work to be done by the Bankruptcy Court; (2) whether the order implicates purely legal issues; (3) the impact of the Bankruptcy Court's order upon the assets of the debtor's estate; (4) the necessity for further fact-finding on remand to the Bankruptcy Court; (5) the preclusive effect of the District Court's decision on the merits of subsequent litigation; and (6) the furtherance of judicial economy.

*Finova*, 2008 WL 522965, *1.

According to A&G, although the Order does not expressly reference the Carveout Question or the Fees and Costs Question, the Order "granted in part and denied in part" A&G's Motion to Compel.  A&G therefore asserts that the relief requested in the Motion to Compel – an order

9

directing JMB to fund the Carve-Out following the Auction and awarding attorneys' fees and costs – was denied and is the subject of this appeal. "Contrary to JMB's assertion that the Bankruptcy Court was merely 'tabling' the Carve-Out Issue," A&G asserts, "there is nothing left for the Bankruptcy Court to do." (D.I. 16 at 6). According to A&G, "[t]he Bankruptcy Court made a legal decision that it cannot direct JMB to fund the Carve-Out without a prior determination of the value of the Debtors' assets." (*Id*.). In so doing, A&G argues, "the Bankruptcy Court rejected [A&G]'s legal position that the Final DIP Order requires JMB to fund the Carve-Out in the Carve-Out Reserve Amount in the event it recovers its collateral" regardless of the value of the Debtors' assets (*Id*.). So although JMB believes that the Bankruptcy Court "was tabling [the Carve-Out] issue until additional efforts were made to market the Debtors' assets" (D.I. 15 at 6-7), A&G argues that "the passage of time will not change the Bankruptcy Court's (incorrect) interpretation of the Final DIP Order."

### A. The Order Is Not Final

The crux of A&G's legal position is that, to the extent that a court grants ***in the future*** any form of relief requested by JMB, such that JMB recovers on its collateral and takes ownership of the Debtors' assets (either in its own name or through an affiliate, including Shady Bird), JMB must be required to fund the Carve-Out in the Carve-Out Reserve Amount. Assuming *arguendo* that this Court is in agreement with A&G's position, this Court must still disagree that the Bankruptcy Court, as A&G asserts, "rejected" this argument or otherwise misinterpreted its Final DIP Order. To the contrary, as the Auction was set aside and the assets abandoned, it does not appear from the record that JMB in fact has ever recovered its collateral or taken ownership of the Debtors' assets. Certainly, neither party makes this assertion in the briefing. At the time of this Cross-Appeal, at least, the Bankruptcy Court had not been called upon to make that determination and has issued no order as to the issues raised in the Cross-Appeal that could be considered final

even under the Third Circuit's pragmatic, flexible approach to the finality of bankruptcy court orders.

### B. The Order Does Not Warrant Interlocutory Review

In the event the Court finds that the August 27 Order is not final as to the issues raised in the Cross-Appeal, A&G asserts that it is interlocutory and requests that the Court treat its Notice of Appeal as a motion for leave to appeal. (D.I. 16 at 8-9 (citing Fed. R. Bankr. P. 8004(d)).

Section 158(a) does not identify the standard district courts should use in deciding whether to grant leave for interlocutory appeal. "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).[2] Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974).

Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty*

---

[2] *See also In re Philadelphia Newspapers, LLC,* 418 B.R. 548, 556 (E.D. Pa. 2009) ("Based upon the decision of the Third Circuit in *Bertoli v. D'Avella (In re Bertoli)*, 812 F.2d 136, 139 (3d Cir. 1987), courts within this Circuit confronted with the decision whether to grant leave to allow an interlocutory appeal are informed by the criteria in 28 U.S.C. § 1292(b).").

11

*View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

A&G simply asserts that its Cross-Appeal "presents a controlling legal question with regard to the Final DIP Order, and the parties have differing views as to the interpretation of that order as it relates to the Carve-Out and JMB's obligations thereunder. In addition, an immediate appeal of the Carveout Question will materially advance the ultimate determination of all litigation regarding the Carve-Out and priority of interests in the Debtors' assets." (D.I. 16 at 9).

The Cross-Appeal does not meet the § 1292(b) criteria. Among other things, the Court is not convinced that immediate appeal would materially advance the ultimate termination of the litigation – or that any litigation even remains between the parties – as it appears that JMB did not recover its collateral. Moreover, this is a case where the Court must deny interlocutory appeal based on its "desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754. Finally, "[i]nterlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation." *AE Liquidation*, 451 B.R. at 349 (internal quotation marks omitted). Here, A&G has not identified any exceptional circumstances that might warrant deviation from the final judgment rule. (*See* D.I. 14). Although JMB's conduct is indeed unfortunate, there is no "urgency that sets this case apart" and establishes the need for immediate review. *In re Magic Rests., Inc.*, 202 B.R. 24, 26-27 (D. Del. 1996).

As the Order cannot be considered final, and interlocutory review is not warranted, the Court lacks jurisdiction over the Cross-Appeal, and it will be dismissed.

### C. Barring Dismissal of the Cross-Appeal Remand of the Questions to the Bankruptcy Court Would Be Appropriate

"To the extent the Court dismisses the appeal for lack of jurisdiction, [A&G] joins in JMB's request to remand the matter to the Bankruptcy Court to rule on the issues raised in the appeal." (D.I. 15 at 8; D.I. 16 at 9). The Court agrees with the parties that if the Court had jurisdiction over the appeal, remand of both the Carve-Out Question and the Fee and Costs Question would be appropriate. The Bankruptcy Court, which has long overseen these cases, is familiar with the parties and the underlying dispute, and has authority over the ultimate disposition of the collateral, is best positioned to pass on these issues in the first instance, if required.

### IV. CONCLUSION

For the reasons set forth herein, the Cross-Appeal is dismissed. An appropriate order follows.